IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BAY POINT CAPITAL PARTNERS II, LP,<br><br>Plaintiff,<br><br>v.<br><br>HOPLITE, INC., HOPLITE ENTERTAINMENT, INC., and JONATHAN LEE SMITH,<br><br>Defendants. | Civil Action No. 1:21-cv-00375-MLB |

**PLAINTIFF BAY POINT CAPITAL PARTNERS II, LP'S
PRELIMINARY STATEMENT IN SUPPORT OF
THE COURT'S SUBJECT MATTER JURISDICTION**

Plaintiff Bay Point Capital Partners II, LP ("Bay Point"), pursuant to the Court's invitation at the March 24, 2021 hearing on Bay Point's Emergency Motion for Appointment of Receiver (Dkt. 3), hereby submits this preliminary statement in support of the Court's subject matter jurisdiction over the above-captioned case.[1]

---

[1] As represented by the Court at the March 24, 2021 hearing, by filing this Statement, Bay Point does not in any way waive its right to file a timely response in opposition to Defendant's Motion to Dismiss (Dkt. 34, 35) on or before April 5, 2021. Bay Point therefore reserves all rights to file such response on or before the April 5th deadline. This Statement is submitted solely for the purpose of supporting the Court's preliminary subject matter jurisdiction analysis, if any.

## I. Argument

Defendants argue that this Court lacks subject matter jurisdiction over this case because Bay Point's Amended Complaint does not assert viable RICO claims. (*See* Dkt. 34.) Yet Defendants fail even to mention the elements of Bay Point's RICO claims, let alone Bay Point's particularized factual allegations in support of them. Rather, Defendants make the blanket assertion that Bay Point's RICO claims must fail because Bay Point's fraud claim is foreclosed by Georgia law.[2] (Dkt. 34 at 12.) Defendants, however, wrongly assume that Bay Point's RICO claims are contingent upon the viability of Bay Point's state-law fraud claim, without a single citation to authority.

Defendants then argue that Bay Point's Amended Complaint does not state a viable claim for fraud under Georgia law because: (1) Bay Point "waived" its fraud claim by affirming, rather than rescinding, the Loan Documents; and (2) the Loan Agreement's merger and integration clauses preclude fraud claims based on pre-Loan Agreement misrepresentations. (Dkt. 34 at 3.) These arguments are based on fundamental misunderstandings of Georgia law and the allegations in Bay Point's Verified Amended Complaint. Accordingly, the Court should reject Defendants' argument that it lacks subject matter jurisdiction over this case.

---

[2] By filing this Statement, Bay Point does not concede that Georgia law applies to its fraud claim.

A. Defendants Incorrectly Assume Bay Point's RICO Claims Are Necessarily Contingent Upon its Fraud Claim.

At the outset, Defendants' argument misses the mark. Defendants assert that this Court lacks subject matter jurisdiction, but wrongly focus their analysis on the viability of Bay Point's state-law fraud claim, rather than Bay Point's RICO claims. Indeed, missing from Defendants' Motion to Dismiss is any discussion of Bay Point's factual allegations in support of the RICO claims, the elements of the RICO claims, or citation to authority that Bay Point's RICO claims are dependent on the viability of its fraud claim. Because Defendants have not shown that Bay Point's RICO claims are dependent on the viability of Bay Point's fraud claim (which, for the reasons discussed *infra*, is a viable claim in any event), Defendants' argument that this Court lack subject matter jurisdiction fails.

B. Bay Point Did Not Waive its Fraud Claim by Affirming the Loan Agreement.

Defendants argue that Bay Point "waived any fraud" by failing to rescind the Loan Agreement after learning of Defendants' fraudulent conduct. (Dkt. 34 at 5-6.) This argument ignores well-settled Georgia law.[3] As this Court has observed:

> A [party] claiming fraud in the inducement, or inceptive fraud to enter into a contract, has an election of remedies. The first option after discovering the fraud is to rescind the contract and, after offering to

---

[3] It also ignores the Cumulative Remedies; Non-Waiver provisions in the First and Second Forbearance Agreements. (Am. Compl. (Dkt. 31) at ¶¶ 85-99).

restore the benefits received under the contract, to sue in tort to recover the purchase price and any additional damages from the fraud. ***Alternatively, the [party] may elect to affirm the contract and sue for damages resulting from the fraud***. Although the latter suit is an independent action in tort, it is based on the defrauded party's election to affirm the contract, and sue for damages resulting from the fraud arising out of the contract.

*Worsham v. Provident Companies, Inc.*, 249 F.Supp.2d 1325, 1331 (N.D. Ga. 2002) (citation omitted) (emphasis added). In other words, "[i]t can not be said that merely affirming the contract by the defrauded party will necessarily deprive him of the right to sue for damages for the fraud inducing him to make the contract, as ***the right to affirm the contract and the right to sue for damages for the fraud coexist***." *Ben Farmer Realty Co. v. Woodard*, 212 Ga. App. 74, 74 (1994) (emphasis added). Accordingly, Defendants' contention that Bay Point waived its right to assert a fraud claim by affirming the Loan Agreement fails as a matter of law.[4]

### C. The Loan Agreement's Merger Clause Does Not Bar Bay Point's Fraud Claim.

---

[4] To be sure, by electing to affirm a fraud-induced contract, a party may waive the right to seek rescission of the contract itself. *See, e.g., Denim N. Am. Holdings, LLC v. Swift Textiles, LLC*, 532 F. App'x 853, 860 (11th Cir. 2013) (holding that "[w]hen [the plaintiff] relied on the agreement to demand and accept the capital contribution in 2009, it ***waived its right to rescission***." (emphasis added).) Bay Point does not seek rescission of the Loan Agreement. As such, Defendants' waiver argument is irrelevant.

Defendants argue that Bay Point cannot allege actionable fraud because the Loan Agreement "has two merger clauses that preclude reliance on pre-agreement representations." (Dkt. 34 at 8, 10.) But even if the merger clause precluded Bay Point's reliance upon Defendants' pre-contract misrepresentations—a point which Bay Point does not concede—it does not preclude Bay Point's reliance on Defendants' misrepresentations (1) in the Loan Agreement itself; (2) in documents expressly incorporated into the Loan Agreement by reference; and (3) made after the effective date of the Loan Agreement. *See, e.g.*, *Authentic Architectural Millworks, Inc. v. SCM Grp. USA, Inc.*, 262 Ga. App. 826, 828 (2003) (holding that, if a plaintiff "relied upon misrepresentations in the contract itself, no alleged merger clause can bar its fraud and misrepresentation claims"); *Conway v. Romarion*, 252 Ga. App. 528, 532 (2001) (finding that, "to the extent that the [plaintiffs] assert that the disclosure statement, which was incorporated into the parties' agreement . . . is fraudulent, such a claim would not be barred by the merger clause"); *TMX Fin., LLC v. Goldsmith*, 352 Ga. App. 190, 206 (2019), *reconsideration denied* (Oct. 10, 2019), *cert. denied* (May 4, 2020) (holding that "the merger clause would not apply to new misrepresentations . . . made by [the defendant] after execution of the Restructuring Agreement").

First, Bay Point's Amended Complaint contains specific factual allegations that Defendants made misrepresentations in the Loan Agreement itself. As just one example, Bay Point alleges that Defendants represented in both Sections 4.1 and 5.8 of the Loan Agreement that they were providing Bay Point with a valid, first priority security interest in the Collateral, as defined in the Loan Agreement (Am. Compl. (Dkt. 31) at ¶¶ 51-52.) Bay Point also alleges that Defendants fabricated several debt subordination and/or standby creditor's agreements, thereby allegedly preventing Defendants from conveying a valid, first priority security interest in the Collateral and rendering these representations in the Loan Agreement false at the time they were made (*Id.* at ¶ 208.) Because these misrepresentations were made in the Loan Agreement, the merger clause is ineffective to bar reliance thereupon.

Second, Bay Point's Amended Complaint contains specific factual allegations that Defendants made misrepresentations in documents incorporated into the Loan Agreement by reference. *See Bowman v. Walnut Mountain Prop. Owners Ass'n, Inc.*, 251 Ga. App. 91, 95 (2001) (Under Georgia law, a contract "may also incorporate by reference . . . other documents . . . so that such documents are treated as if a part of the document making the reference."). For instance, the Amended Complaint alleges that the Loan Agreement expressly

references Defendants' License Agreements with Big Media Holdings and Screen Media Ventures, which were to serve as "Specified Collateral." (Am. Compl. (Dkt. 31) at ¶ 49, Ex. E at 7.) Bay Point also alleges that both License Agreements are fraudulent. (*Id*. at ¶¶ 127-138, 208-209, 214.) These allegedly fraudulent documents, incorporated into the Loan Agreement by reference, are likewise not subject to the merger clause.

Finally, the Amended Complaint contains detailed factual allegations regarding Defendants' misrepresentations after the parties entered into the Loan Agreement, thus rendering the merger clause irrelevant. For example, Bay Point alleges that, after the parties entered the Loan Agreement, Defendants sent Bay Point falsified ACH and wire transfer confirmations, which Bay Point relied upon in deciding to forbear from foreclosing on the Loan. (Am. Compl. (Dkt. 31) at ¶¶ 110-126, 170, 208, 211-212, 214.)

## II. Conclusion

For the reasons stated above, Defendants' focus on Bay Point's fraud claim, rather than its RICO claims, is fatal to their subject matter jurisdiction argument. But even if that was not so, Bay Point did not "waive" its fraud claim by affirming the Loan Agreement. Nor does the Loan Agreement's merger clause bar Bay Point's fraud claim. Accordingly, the Amended Complaint adequately alleges a

fraud claim—as well as independent RICO claims—and Defendants' argument that the Court lacks subject matter jurisdiction over this case should be rejected.

| | |
|---|---|
| Dated: March 29, 2021 | By: /s/ Alexandra S. Peurach |
| | Harris B. Winsberg (Bar No. 770892) |
| | harris.winsberg@troutman.com |
| | Alexandra S. Peurach (Bar No. 451333) |
| | alexandra.peurach@troutman.com |
| | Christopher J. Kelleher (Bar No. 937613) |
| | chris.kelleher@troutman.com |
| | TROUTMAN PEPPER |
| | HAMILTON SANDERS LLP |
| | Bank of America Plaza |
| | 600 Peachtree Street NE |
| | Suite 3000 |
| | Atlanta, GA  30308-2216 |
| | Telephone:     404.885.3000 |
| | Facsimile:     404.885.3900 |
| | |
| | Attorneys for Plaintiff |
| | Bay Point Capital Partners II, LP |

## LOCAL RULE 7.1D CERTIFICATION

By signature below, counsel certifies that the foregoing document was prepared in Times New Roman, 14-point font, in compliance with Local Rule 5.1C.

            */s/ Alexandra S. Peurach*
            Alexandra S. Peurach (Bar No. 451333)

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which serves notification of such filing to all CM/ECF participants.

This 29th day of March, 2021.

> */s/ Alexandra S. Peurach*
> Alexandra S. Peurach (Bar No. 451333)